**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | |
|---|---|
| **DEREK DEDE,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Civil Action No.  1:07-cv-344-MEF-SRW** |
| | ) |
| **BEN MOATES, ET. AL,** | ) |
| | ) |
| **Defendants.** | ) |

**DEFENDANT(S)' SPECIAL REPORT**

COME NOW former Coffee County Jail Administrator Zack Ennis and former Coffee County Sheriff Ben Moates,[1] Defendant(s) in the above-styled cause, and submit their Special Report to the Court.

**INTRODUCTION**

On April 24, 2007, Plaintiff filed his Complaint with this Court, naming the Coffee County "Sheriff, Administration, Etc, and All."[2] (Doc. 1.)  On May 10, 2007, Plaintiff filed his Amended Complaint naming Zack Ennis, the Coffee County Jail Administrator at the time of his incarceration.[3] (Doc. 5.)  The Amended Complaint also named Ben Moates, the Coffee County

---

[1] Ben Moates is treated as a Defendant for purposes of this Special Report <u>only</u> to the extent that the Amended Complaint states a claim against him.  <u>See</u> note 4, <u>infra</u>.

[2] On April 27, the Magistrate Judge entered an Order directing Plaintiff to file an Amended Complaint naming those individuals responsible for the alleged violations of his constitutional rights and specifically describing how each Defendant violated his constitutional rights.  (Doc. 4)

[3] Zack Ennis is sued as the "Zack Ennis, Administrator Coffee County Jail."  <u>See</u> Caption of Complaint.  He is identified in the Amended Complaint as "Coffee County [Jail] Administrator."  <u>See</u> Complaint, ¶ 1.  It should be assumed that the Plaintiff has sued Zack Ennis in his official capacity.  <u>See</u> <u>Marsh v. Butler County</u>, 268 F.3d 1014, 1024 n.4 (11th Cir. 2001) (en banc) (concluding that a Court would "decide th[e] case as one in which the complaint purports to sue the Sheriff in both her official and individual capacities," even though the text of the complaint did not state an individual capacity claim, only because "the parties and the district judge clearly litigated the case in that way").  Likewise, Ben Moates is identified in the Amended Complaint as "Ben Moates, Coffee County Sheriff, at this time of incident."  To the extent a claim is stated in the Amended Complaint against Ben Moates, <u>see</u> note 3, <u>infra</u>, it is against him in his official capacity.

Sheriff at the time of Plaintiff's incarceration, but stated that he is "not included as a defendant."[4] (Doc. 5, p. 1.)  On May 11, 2007, the Court ordered Defendants to file a Special Report.  (Doc. 6.)  On June 14, 2007, the Defendants filed a Motion for Extension of Time to File Their Special Report and Answer. (Doc. 9.)  On June 15, 2007, the Court granted the Defendants' Motion and extended the time for the filing of a Special Report to July 2, 2007.  (Doc. 10.)

<p align="center">PLAINTIFF'S ALLEGATIONS</p>

In his Amended Complaint, Plaintiff appears to name two federal claims and one state law claim.  The Plaintiff's federal claims are deliberate indifference claims, one relating to what Plaintiff contends was inadequate treatment of his headaches and dizziness, and the other relating to Plaintiff's he was exposed to and contracted Tuberculosis ("TB") during his incarceration. The Plaintiff's state law claim appears to be an Infliction of Emotional Distress claim arising out of the conditions at the Coffee County Jail.

<p align="center">DEFENDANTS' RESPONSE TO PLAINTIFF'S ALLEGATIONS</p>

The Defendant(s) deny the allegations made against them by Plaintiff as being untrue and completely without basis in law or fact.  The Defendant(s) deny that they acted, or caused anyone to act, in such a manner as to deprive Plaintiff of any right to which he was entitled.  The Defendant(s) raise the defenses of Eleventh Amendment immunity, absolute immunity, qualified immunity, and additional defenses presented below.  The Defendant(s) reserve the right to add additional defenses if any further pleading is required or allowed by the Court.

I.     FACTS

Plaintiff was incarcerated in the Coffee County Jail on November 17, 2005, on charges of robbery in the first degree.  (Exhibit A, Inmate Records of Derek Dede, "Inmate Records,"

---

[4] Although the Amended Complaint states that Ben Moates is "not included as a defendant," (Doc. 5, p. 1.), he has been served with a copy of the Amended Complaint (Doc. 8.), and Plaintiff has alleged in his Amended Complaint that Ben Moates violated Plaintiff's constitutional rights.  Ben Moates is treated as a Defendant for purposes of this Special Report only to the extent that the Amended Complaint states a claim against him.

<p align="center">2</p>

Intake Sheet.)

### A.    Plaintiff's Medical Treatment

#### 1.    Headaches and Dizziness

Plaintiff alleges in his Amended Complaint that he suffered headaches and dizziness as soon as he arrived at the Coffee County Jail.  (Doc. 5, p. 2.)  It is the policy of the Coffee County Jail that inmates receive necessary medical care.  (Exhibit B, Declaration of Ben Moates, "Moates Decl.," ¶ 5; Exhibit C, Declaration of Zack Ennis, "Ennis Decl.," ¶ 5.)  It would be a violation of policy for anyone to deny an inmate necessary medical care.  (Ex. B, Moates Decl. ¶ 5; Ex C, Ennis Decl. ¶ 5.)

Plaintiff first complained about his alleged headaches and dizziness in an inmate grievance form on May 3, 2006.  (Exhibit D, Declaration of Stanley Guy Roberts, "Roberts Decl.," ¶ 4.)  On June 7, 2006, Plaintiff was transported Dr. Cochran for his complaints of headaches and dizziness.  (Exhibit E, Inmate Records, Medical Transport Sheet, 6/7/06; Ex. D, Roberts Decl. ¶ 5.)  Dr. Cochran noted that Plaintiff complained of headaches, dizziness, that he had passed out twice in the prior week, and told Dr. Cochran that he had a knot on his back. (Exhibit F, Inmate Records, Patient Record, 6/7/06; Exhibit G, Declaration of Henry Stewart Cochran, "Cochran Declaration," ¶ 4.)  Dr. Cochran diagnosed Plaintiff as suffering from muscle-tension headaches, and found no indication of any other condition that would contribute to his dizziness or passing out.  (Ex. G, Cochran Decl. ¶ 8.)  Regarding the knot on Plaintiff's back, Dr. Cochran determined that it was a lypoma, or a benign fat cell tumor that required no medical treatment.  (Ex. G, Cochran Decl. ¶¶ 6, 7, 10.)  Dr. Cochran prescribed Plaintiff Norgesic Forte for the muscle-tension headaches, and Plaintiff was provided that medication at the Coffee County Jail.  (Ex. G, Cochran Decl. ¶ 9; Ex. D, Roberts Decl. ¶ 6.)

On September 1, 2006, Plaintiff was, again, transported to Dr. Cochran for an evaluation of his complaints of headaches and dizziness.  (Exhibit H, Inmate Records, Medical Transport Sheet 9/1/06; Ex. G, Cochran Decl. ¶ 11; Ex. D, Roberts Decl. ¶ 7.)  Plaintiff told Dr. Cochran that he began passing out on May 6, 2006, and that he was unable to take the Norgesic Forte Dr. Cochran had prescribed because it gave him rectal bleeding.  (Ex. H, Inmate Records, Medical Transport Sheet 9/1/06; Ex. G, Cochran Decl. ¶ 11.)  Dr. Cochran refused to see Plaintiff again, because he was combative and verbally abusive.  (Ex. H, Inmate Records, Medical Transport Sheet 9/1/06; Ex. G, Cochran Decl. ¶ 12.)

On October 5, 2006, Plaintiff was then taken to Dr. Roberts at the Elba General Hospital for an evaluation of his complaints about headaches and dizziness.  (Exhibit I, Inmate Records, Medical Transport Sheet 10/5/06; Ex. D, Roberts Decl. ¶ 9.)  Dr. Roberts prescribed Keflex for his headaches, and Plaintiff was provided that medication at the Coffee County Jail.  (Ex. D, Roberts Decl. ¶ 10.)  Dr. Roberts also scheduled Plaintiff for a CT scan of his head.  (Ex. D, Roberts Decl. ¶ 10.)  On October 6, 2006, Plaintiff was transported to the Elba General Hospital for a CT scan of his head.  (Exhibit J, Inmate Records, Medical Transport Sheet, 10/6/06; Ex. D, Roberts Decl. ¶ 11.)  Dr. Roberts provided no further instructions regarding Plaintiff's medical care.  (Ex. D, Roberts Decl. ¶ 11.)

## 2.    Tuberculosis

Plaintiff alleges in his Amended Complaint that while he was incarcerated in the Randolph County Jail, he was exposed to Tuberculosis ("TB").  (Doc. 5, p. 3.)  Plaintiff claims that he was housed with another inmate, Dennis Cooper, "who had a full blow [sic] of Tuberculosis," and that Plaintiff contracted TB from Mr. Cooper.  (Doc. 5., p. 3.)  Dr. Preyear stated that Mr. Cooper was not contagious, if in fact he had TB, because he was taking the medication provided by the Health Department, as prescribed, and as a result, he was allowed to

mix with the general population.  (Ex. D, Roberts Decl. ¶ 14.)  In fact, Plaintiff tested positive for exposure to TB on July 26, 2006, *four months prior* to Mr. Cooper's incarceration at the Coffee County Jail.[5]  (Ex. D, Roberts Decl. ¶¶ 3, 9.)  At that time, Defendant Ennis, the only party against whom Plaintiff alleges a claim in his Amended Complaint, was not even working at the Coffee County Jail.  (Ex. C, Ennis Decl. ¶¶ 1, 7.)  On August 11, 2006, Plaintiff was transported to the Health Department for an X-ray that would determine whether he had, in fact, contracted TB.  (Exhibit K, Inmate Records, Medical Transport Sheet, 8/11/06; Ex. D, Roberts Decl. ¶ 17.)  In August, 2006, the Health Department prescribed Mr. Dede INH, a preventative and treatment medication for TB, and vitamin B-6 as a preventative measure to keep Plaintiff from developing TB.  (Ex. D, Roberts Decl. ¶ 19.)  Plaintiff was provided that medication.  (Ex. D, Roberts Decl. ¶ 21.)  After reviewing his X-ray, the TB nurse from the Health Department confirmed that Plaintiff did not contract TB.  (Exhibit L, Inmate Records, Grievance Response, 8/23/06; Ex. D, Roberts Decl. ¶ 17.)

## II.    LAW

### A.    All claims by Plaintiff against the Defendant(s) in their official capacities must fail based on Eleventh Amendment immunity and because they are not "persons" under 42 U.S.C. § 1983.

Plaintiff's claims against the Defendant(s) in their official capacities are due to be dismissed for lack of subject matter jurisdiction; as such claims are barred by the Eleventh Amendment to the United States Constitution.  Parker v. Williams, 862 F.2d 1471, 1476 (11th Cir. 1989) (holding a sheriff sued in his official capacity is entitled to Eleventh Amendment immunity); Free v. Granger, 887 F.2d 1552, 1557 (11th Cir. 1989) (holding that a sheriff sued in his official capacity is entitled to Eleventh Amendment immunity); Carr v. City of Florence, 918

[5] Even if the Plaintiff had not already been exposed to T.B. before Mr. Cooper arrived at the jail, he could not have contracted it from Mr. Cooper, because, as Dr. Preyear stated, Mr. Cooper was not contagious and could mix freely with the general population.  (Ex. D, Roberts Decl. ¶ 14.)

5

F.2d 1521, 1525 (11th Cir. 1990) (holding a deputy sheriff sued in his official capacity is entitled to Eleventh Amendment immunity); Lancaster v. Monroe County, 116 F.3d 1419, 1430-31 (11th Cir. 1997) (extending Eleventh Amendment immunity to include jailers employed by county sheriffs).

In addition, the official capacities claims must fail because 42 U.S.C. § 1983 prohibits a person, acting under color of law, from depriving another of his rights secured by the United States Constitution. 42 U.S.C. § 1983 (emphasis added). The United States Supreme Court has held that state officials, in their official capacities, are not "persons" under § 1983. Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989). Any official capacity claims against the Defendant(s) should therefore be dismissed because the Defendant(s) are not "persons" under § 1983 and therefore all official capacity claims fail to state a claim upon which relief can be granted. Id.; Carr, 916 F.2d at 1525 n.3.

**B.    Alternatively, the Defendant(s) are entitled to summary judgment based on absolute immunity and qualified immunity.**

Plaintiff's claims are barred on two additional immunity grounds. First, the Defendant(s) are absolutely immune under Article I, § 14 of the Alabama Constitution of 1901 in both their official and individual capacities to the Plaintiff's state law claim. Second, in their individual capacities, the Defendant(s) are entitled to qualified immunity to Plaintiff's federal claims.

**1.    The Defendant(s) are entitled to absolute immunity to Plaintiff's state law Infliction of Emotional Distress claim.**

The Defendant(s) are absolutely immune to Plaintiff's claims for money damages under Article I, § 14 of the Alabama Constitution of 1901. Article I, § 14 of the Alabama Constitution of 1901 provides "[t]hat the State of Alabama shall never be made a defendant in any court of law or equity." This section grants the State and its agencies an "absolute" immunity from suit in any court. Ex parte Mobile County Dep't of Human Res., 815 So. 2d 527, 530 (Ala. 2001).

6

Section 14 immunity bars "almost every conceivable type of suit." Hutchinson v. Bd. of Trustees of Univ. of Ala., 256 So. 2d 281, 283 (Ala. 1971). Section 14 immunity is "nearly impregnable." Patterson v. Gladwin Corp., 835 So. 2d 137, 142 (Ala. 2002).

To the extent the Amended Complaint states a claim against him, Ben Moates, as Sheriff of Coffee County, was an executive branch constitutional officer of the State of Alabama at the time of the alleged incidents. See Article V, § 112 of the Alabama Constitution of 1901; see also McMillian v. Monroe County, 520 U.S. 781, 793 (1997) (holding that an Alabama sheriff acts for the state and not his county when carrying out law enforcement duties); Carr v. City of Florence, 916 F.2d 1521, 1525-26 (11th Cir. 1990). Therefore, a suit against him in his official capacity is a suit against the State of Alabama. See Hafer v. Melo, 502 U.S. 21, 25 (1991); Lancaster v. Monroe County, 116 F.3d 1419, 1429 (11th Cir. 1998); see also Kentucky v. Graham, 473 U.S. 159, 165-66 (1985). Similarly, because Defendant Ennis acted for the Sheriff as the Jail Administrator, he is also a state official. Lancaster, 116 F.3d at 1429 ("Alabama jailers are state officials entitled to Eleventh Amendment immunity when sued in their official capacities.").

As executive branch, constitutional officers of the State at the time of the alleged incidents, the Defendant(s) are immune from suit under Article I, § 14 of the Alabama Constitution of 1901. This section immunizes them from **all** state law claims, including claims for infliction of emotional distress, even though they are sued in their individual capacities. Tinney v. Shores, 77 F.3d 378, 383 (11th Cir. 1986) (holding sheriff and deputy sheriff were entitled to state sovereign immunity); Lancaster, 116 F.3d at 1431 (holding sheriff and jailers were entitled to sovereign immunity); Parker v. Amerson, 519 So. 2d 442, 445 (1987) (holding the Sheriff immune from suit although sued "individually, and as Sheriff"); Ex parte Purvis, 689 So. 2d 794, 796 (Ala. 1996) (holding sheriff and deputy were entitled to sovereign immunity in both

their individual and official capacities); Ex parte Haralson, 871 So. 2d 802, 807 (Ala. 2003)

(holding deputy sheriff entitled to sovereign immunity).

There are, however, limited exceptions to this immunity. An Alabama sheriff is immune

from suit:

> except for actions brought (1) to compel him to perform his duties, (2) to compel
> him to perform ministerial acts, (3) to enjoin him from enforcing unconstitutional
> laws, (4) to enjoin him from acting in bad faith, fraudulently, beyond his
> authority, or under mistaken interpretation of the law, or (5) to seek construction
> of a statute under the Declaratory Judgment Act if he is a necessary party for the
> construction of the statute.

Parker, 519 So. 2d at 443. Accordingly, even in situations where sheriffs and their employees

are sued for negligence or bad faith, the only exceptions to sovereign immunity allowed by the

Alabama Supreme Court under Art. 1, § 14 of the Alabama Constitution of 1901, are to enjoin

their conduct. Alexander v. Hatfield, 652 So. 2d 1142, 1143 (Ala. 1994). With only these

narrow exceptions, Alabama sheriffs and their deputies are immune from suit. Ex parte Purvis,

689 So. 2d at 796; Ex parte Blankenship, 893 So.2d 303, 305 (Ala. 2004).

The Alabama Supreme Court again affirmed that sheriffs and deputies enjoy absolute

immunity to state law money damages claims. Ex parte Davis, 930 So. 2d 497, 501 (Ala. 2005).

In Davis, the Conecuh County Circuit Court refused to grant a Conecuh County deputy's motion

to dismiss state law money damages claims. 930 So. 2d at 499. Plaintiff's claims against the

deputy included false imprisonment, assault and battery, outrage, wantonness, negligence,

trespass, and conversion. Id. Granting the deputy's petition for a writ of mandamus and

instructing the circuit court to grant the motion to dismiss, the Alabama Supreme Court held that

"an action against a sheriff – or a deputy sheriff – for damages arising out of the performance of

his duties is essentially a suit against the state" and thereby barred under Article I, § 14 of the

Alabama Constitution of 1901. Id. at 501 (internal quotations and citations omitted).

Here, Plaintiff has alleged that at all times relevant he was an inmate in the Coffee County Jail. He has alleged that the actions taken by Defendant Ennis and Defendant Moates, to the extent a claim is stated against him in the Amended Complaint, were taken in their capacities as Sheriff and Administrator. It is only in those capacities that either man had any authority or reason to supervise Plaintiff or control his movements in any way. It was only in their respective capacities that these men had any authority to supervise the corrections officers handling medical claims, the administration of medications, and the transportation of inmates to medical professionals. Accordingly, as the Defendant(s) are being sued for actions taken in the line and scope of their duties and Plaintiff seeks money damages for his negligence claim, that claim is barred by Article I, § 14 of the Alabama Constitution of 1901.

### 2. The Defendant(s) are entitled to qualified immunity because nothing in their conduct crossed a "bright line" contour of clearly established constitutional law.

The Defendant(s) were acting within their discretionary authority as the Jail Administrator of the Coffee County Jail or the Sheriff of Coffee County during all times relevant to Plaintiff's Complaint because all their actions were taken in the furtherance of their duties. See, e.g. Holloman ex rel. Holloman v. Harland, 370 F.3d 1252 (11th Cir. 2004). Once a defendant has asserted the defense of qualified immunity and shown that he was acting within his discretionary authority, the threshold inquiry a court must undertake is whether Plaintiff's allegations, if true, establish a constitutional violation. Saucier v. Katz, 533 U.S. 194, 201 (2001). This initial inquiry is whether "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Id. (citing Siegert v. Gilley, 500 U.S. 226, 232 (1991)). As set forth previously, the Amended Complaint appears to state two federal claims. Plaintiff alleges that the Defendant(s) denied him

proper medical care, but he has failed to establish that any conduct of the Defendant(s) violated any federally protected right.

> **a.    Neither Defendant Ennis nor Defendant Moates violated Plaintiff's federally protected rights.**

There are no facts to support a claim against the Defendant(s) for their failure to provide Plaintiff proper medical care. In order to prevail under 42 U.S.C. § 1983 on this claim, Plaintiff must demonstrate that the Defendant(s) were deliberately indifferent to a "serious" medical condition, such that any conduct by the Defendant(s) constituted an Eighth Amendment violation. See Hudson v. McMillian, 503 U.S. 1, 9 (1992) ("Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'") (citing Estelle v. Gamble, 429 U.S. 97, 103-104 (1976)). In Estelle, the Supreme Court stated:

> [I]n the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute 'an unnecessary and wanton infliction of pain' or to be 'repugnant to the conscience of mankind.' Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment.

429 U.S. at 105-06 (emphasis added). See also, Farmer v. Brennan, 511 U.S. 825, 837 (1994) ("Deliberate indifference describes a state of mind more blameworthy than negligence."). Furthermore, where a prisoner has received medical attention and the dispute concerns the adequacy of the medical treatment, deliberate indifference is not shown. Hamm v. DeKalb County, 774 F.2d 1567 (11th Cir. 1985).

### (1)    Headaches and Dizziness

In the instant case, Plaintiff has not shown that his headaches and dizziness are a serious medical condition.  Furthermore, Plaintiff was taken to see a Dr. Cochran immediately upon his request for medical attention, who concluded that Plaintiff's headaches and dizziness were a result of muscle-tension headaches.  Dr. Cochran prescribed Plaintiff a medication for those headaches, which was administered to Plaintiff at the jail.  Plaintiff was taken to see Dr. Cochran a second time for his headaches and dizziness, but Dr. Cochran refused to treat him further because of Plaintiff was combative and verbally abusive.  Plaintiff was then taken to another doctor, Dr. Roberts, the following month, and was prescribed medication and a CT scan, all of which was provided to the plaintiff.  Such attention to Plaintiff's injuries cannot be reasonably construed as indifference that offends the "evolving standards of decency" in violation of the Eighth Amendment.

Clearly Plaintiff's claims are not for a denial of medical care, but rather for his satisfaction with the medical care he received.  However, an inmate does not have a right to a **specific** kind of treatment.  <u>City of Revere v. Massachusetts General Hosp.</u>, 463 U.S. 239, 246 (1983) (holding, "the injured detainee's constitutional right is to receive the needed medical treatment; **how [a municipality] obtains such treatment is not a federal constitutional question**.") (emphasis added).  Additionally, this Court should not substitute its medically untrained judgment for the professional judgment of the medical health professionals who treated Plaintiff.  <u>See</u> <u>Waldrop v. Evans</u>, 871 F.2d 1030, 1035 (11th Cir. 1989) (observing that "when a prison inmate has received medical care, courts hesitate to find an Eighth Amendment violation"); <u>Hamm v. DeKalb County</u>, 774 F.2d 1567, 1575 (11th Cir. 1985) (stating that the evidence showed the plaintiff received "significant" medical care while in jail, and although plaintiff may have desired different modes of treatment, care provided by jail did not constitute

deliberate indifference), <u>cert. denied</u>, 475 U.S. 1096 (1986); <u>Westlake v. Lucas</u>, 537 F.2d 857, 860 n.5 (6th Cir. 1976) (stating "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments").

Furthermore, the Defendant(s) do not have any kind of medical education, training or experience. (Ex. B, Moates Decl. ¶ 11; Ex. C, Ennis Decl. ¶ 11.) They rely upon the professional judgment of medical professionals who have been retained to provide care to the inmates. In <u>Williams v. Limestone County</u>, 198 F.Appx. 893 (11th Cir. 2006), the Eleventh Circuit had addressed in an unpublished opinion the issue of whether an inmate may maintain a medical claim under the auspices of § 1983 against prison officials with no medical background. In <u>Williams</u>, the Eleventh Circuit held that a Sheriff was not liable for failure to train his employees in emergency medical procedures. In so holding, the Court noted:

> [W]e cannot say, on this record, that "the need for more or different training [was] obvious," such that by failing to ensure jail personnel were trained in emergency medical procedures, Sheriff Blakely disregarded a substantial risk that the jail staff would be deliberately indifferent to inmates' medical needs ….
>
> [T]here is no indication from the record that Sheriff Blakely had notice his policies, training procedures, or supervision were "likely to result in the violation of a constitutional right." ….
>
> [S]upervisory officials are entitled to rely on medical judgments made by medical professionals responsible for prisoner care. <u>See, e.g.</u>, <u>Durmer v. O'Carroll</u>, 991 F.2d 64, 69 (3d Cir.1993); <u>White v. Farrier</u>, 849 F.2d 322, 327 (8th Cir.1988). In this case, Sheriff Blakely promulgated general procedures for dealing with emergency situations, which procedures relied primarily on the medical expertise Naphcare was obligated by contract to provide …. "[D]eliberate indifference is a stringent standard of fault, requiring proof that [the] actor disregarded a known or obvious consequence of his action." <u>Bd. of County Comm'rs v. Brown</u>, 520 U.S. 397, 117 S. Ct. 1382, 1391, [] (1997). <u>See also</u> <u>Adams v. Poag</u>, 61 F.3d 1537, 1543 (11th Cir. 1995). Williams [the plaintiff], as the district court concluded, thus failed to meet his burden on summary judgment of establishing that Sheriff Blakely's failure to train jail personnel amounted to deliberate indifference to Williams' serious medical condition.

198 Fed.Appx. at 897-898.

The Eighth Circuit has also addressed whether a Sheriff's staff may be held liable for claims of deliberate indifference to a medical condition when medical treatment is provided. In Meloy v. Bachmeier, 302 F.3d 845 (8th Cir. 2002), a former inmate sued several prison doctors, a nurse, and the prison's medical director[6] for failing to provide him with a positive air pressure machine needed to treat his sleep apnea. 302 F.3d at 847. Reversing the district court's denial of summary judgment for the director, the Eighth Circuit began by making some common sense observations. "A prison's medical treatment director who lacks medical expertise cannot be liable for the medical staff's diagnostic decisions." 302 F.3d at 847 citing, Camberos v. Branstad, 73 F.3d 174, 176 (8th Cir. 1995). Further, the Meloy court stated "[p]rison officials cannot substitute their judgment for a medical professional's prescription." Id. citing, Zentmyer v. Kendall County, 220 F.3d 805, 812 (7th Cir. 2000). Finally, the court held:

> The law does not clearly require an administrator with less medical training to second-guess or disregard a treating physician's treatment decision. Because the law was not clearly established that [the director] was deliberately indifferent to [the plaintiff's] serious medical needs, [the director] is entitled to qualified immunity.

302 F.3d at 849.

In the instant case, the evidence shows that Plaintiff was treated by Dr. Cochran and Dr. Roberts, both medical doctors, for Plaintiff's medical concerns regarding his headaches and dizziness. The Defendant(s), who are not trained and licensed medical providers, are in no way responsible for second-guessing the judgments of these medical doctors.

### (2)    Tuberculosis

There are no facts to support Plaintiff's deliberate indifference claim as to his purported contraction of TB. Although TB is a serious medical condition, it is only serious to the extent that a person has contracted it. As set forth in the facts, Plaintiff did not contract TB.

---

[6] The medical director was a trained and licensed nurse. 302 F.3d at 846.

Additionally, as discussed above, the inmate from whom Plaintiff alleges he contracted TB was not at the jail during the period Plaintiff was exposed to TB.

The Defendant(s) have provided Plaintiff with treatment for his exposure to TB. They followed all the advice and recommendations of the medical professionals at the Health Department regarding the treatment and containment of TB.[7]  Plaintiff was provided prompt diagnosis and treatment through the Health Department, and he was provided all the preventative medications. As a result, even though Plaintiff was exposed to TB at some point (possibly before his incarceration), he never contracted it. Despite Plaintiff's allegations, the Defendant(s) were not obliged to separate inmates with TB, so long as those inmates are actively taking their TB medication. (Ex. D, Roberts Decl. ¶ 15.) Here, both Plaintiff and the inmate from whom Plaintiff mistakenly believes he contracted TB were provided TB medication throughout their incarceration. As noted above, the Defendant(s) are not required to second-guess the recommendations of the TB professionals at the Health Department regarding the treatment and containment of TB.

> **b.** **Neither the caselaw of the 11th Circuit nor that of the United States Supreme Court placed Defendant(s) Ennis and Moates on notice that their conduct would violate Plaintiff's "clearly established" federal rights.**

Even if Plaintiff had successfully stated a constitutional violation, he must prove that the state of the law provided the Defendant(s) "fair warning" that their conduct would violate Plaintiff's "clearly established" federal rights. Willingham v. Loughnan, 321 F.3d 1299, 1301 (11th Cir. 2003). In determining whether the conduct of the Defendant(s) was clearly established as violating Plaintiff's constitutional rights, the reviewing court must examine the state of the law at the time the alleged deprivation occurred. See Rodgers v. Horsley, 39 F.3d 308, 311 (11th Cir.

---

[7] If these Defendants had not followed the advice and recommendations of the medical professionals regarding the treatment and spread of TB, they not only would endanger other inmates, but they would also endanger themselves and their staff, all of whom have day-to-day interaction with these inmates.

1994).  A constitutional right is clearly established only if its contours are "sufficiently clear that a reasonable official would understand that what he is doing violates that right."  <u>Anderson v. Creighton</u>, 483 U.S. 635, 640 (1987); <u>Lancaster</u>, 116 F.3d at 1424.  "In this circuit, the law can be 'clearly established' for qualified immunity purposes only by decisions of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose," here, the Alabama Supreme Court.  <u>Jenkins v. Talladega Bd. of Educ.</u>, 115 F.3d 821, 827 (11th Cir. 1997) (<u>en banc</u>) (citations omitted).  "Unless a government agent's act is so obviously wrong, in the light of pre-existing law, that only a plainly incompetent officer or one who was knowingly violating the law would have done such a thing, the government actor has immunity from suit."  <u>Storck v. City of Coral Springs</u>, 354 F.3d 1307, 1318 (11th Cir. 2003), 354 F.3d at 1318 (quoting 28 F.3d at 1149).

### (1)    Headaches and Dizziness

Neither the United States Supreme Court, nor the Eleventh Circuit, nor the Alabama Supreme Court has held that a Sheriff or a jail administrator is liable under 42 U.S.C. § 1983 for deliberate indifference to an inmate's medical needs when the inmate was provided medical treatment by two different doctors on three different occasions.  As noted above, an inmate does not have a right to a **specific** kind of treatment.  No cases in this Circuit have held a Sheriff or Jail Administrator liable for deliberate indifference where an inmate has received medical treatment on multiple occasions for injuries that were not serious.  Therefore, Defendant Ennis and Defendant Moates, to the extent that the Amended Complaint states a claim against him, cannot be deemed to have violated Plaintiff's "clearly established" rights under the existing caselaw as to Plaintiff's claim for denial of medical care for his headaches and dizziness.

15

<div align="center">(2)      **Tuberculosis**</div>

Likewise, as to Plaintiff's claims for deliberate indifference to his exposure to TB, neither the United States Supreme Court, nor the Eleventh Circuit, nor the Alabama Supreme Court has held that a Sheriff or a jail administrator is liable for deliberate indifference liable on a theory of deliberate indifference for an inmate's exposure to a communicable disease, such as TB, in the jail when the sheriff and jail administrator followed all the recommendations of the medical professionals for treatment and containment of that communicable disease.

To the extent that caselaw of this Circuit provides any guidance as to the constitutionality of Defendant(s) Ennis and Moates' actions, it merely provides notice that the Eighth Amendment requires a remedy for exposing inmates to contagious diseases, even though the inmates never contracted any disease.  See Farmer, 511 U.S. at 844 ("the Eighth Amendment requires a remedy for exposure of inmates to 'infectious maladies' such as hepatitis and venereal disease 'even though the possible infection might not affect all of those exposed.'") (quoting Helling v. McKinney, 509 U.S. 25, 33 (1993)); see also Hutto v. Finney, 437 U.S. 678, 682-83 (1978) (finding an Eighth Amendment violation where "the prisoners were given mattresses to spread on the floor.  Although some prisoners suffered from infectious diseases such as hepatitis and venereal disease, mattresses were removed and jumbled together each morning, then returned to the cells at random in the evening.").  Eleventh Circuit precedent also recognizes that the careless treatment of contagious diseases implicates the Eighth Amendment.  See Gates v. Collier, 501 F.2d 1291, 1300 (5th Cir. 1974) (noting in the context of an Eighth Amendment analysis, "Facilities for the disposal of human waste at all camps present an immediate health hazard; contamination of the prison water supply caused by inadequate sewage has led to the

spread of infectious diseases.");[8] <u>Marsh v. Butler County</u>, 268 F.3d 1014, 1034 (11th Cir. 2001) (citing <u>Collier</u> with approval).  However, no caselaw from this Circuit has ever held jail officials liable for an inmate's contraction of a contagious disease.  <u>See, e.g.</u>, <u>Harris v. Thigpen</u>, 941 F.2d 1495, 1508 (11th Cir. 1991) (holding that DOC was <u>not liable</u> for deliberate indifference to treatment of contagious diseases, even though "the lack of knowledge of certain primary care physicians at Limestone and Tutwiler relating to some seemingly basic terminology about the diagnosis, prophylaxis, monitoring, and treatment of HIV infection is disturbing.").

Defendant(s) Ennis and Moates certainly were not careless in their treatment of Plaintiff's TB, nor were they careless in their effort to contain any potential outbreak.  The medical advice they received did not require segregation of exposed inmates.  As discussed above, both Plaintiff and Mr. Cooper received immediate medical attention for their purported exposure to TB.  Both Plaintiff and Mr. Cooper received the preventative TB medications as prescribed by the Health Department.  The circumstances Plaintiff alleges in his Amended Complaint are a far cry from those present in <u>Hutto</u> or <u>Gates</u>.  The Defendant(s), here, followed all the recommendations of the medical professionals for treatment and containment of that communicable disease.  Therefore, Defendant Ennis and Defendant Moates, to the extent that the Amended Complaint states a claim against him, cannot be deemed to have violated Plaintiff's "clearly established" rights under the existing caselaw as to Plaintiff's claim for denial of medical care for his exposure to TB.

---

[8] Fifth Circuit decisions that predate the creation of the Eleventh Circuit are binding on the Eleventh Circuit, until overruled by that Court en banc.  <u>Bonner v. City of Prichard</u>, 661 F.2d 1206, 1210 (11th Cir. 1981) ("The decisions of the former Fifth Circuit, adopted as precedent by the Eleventh Circuit, will, of course, be subject to the power of the Eleventh Circuit sitting en banc to overrule any such decision.").

> c.    The text of the constitutional provisions that Plaintiff alleges
> were violated do not on their face prohibit the conduct of the
> Defendant(s).

The Eleventh Circuit has recognized an alternate method for establishing that the Defendant(s) had notice that their conduct was unlawful. Accordingly, even where Plaintiff cannot demonstrate that the caselaw provides the Defendant(s) notice that their conduct violates his constitutional rights, as is the case here, he can establish that the Defendant(s) still had "fair warning" of the constitutional deficiencies of their conduct from the text of the constitutional provision in question. In such a case, Plaintiff must either demonstrate that the pertinent federal statute or federal constitutional provision is specific enough on its face to prohibit the conduct of the Defendant(s) as unconstitutional, even in the total absence of caselaw. Storck v. City of Coral Springs, 354 F.3d 1307, 1317 (11th Cir. 2003). The Eleventh Circuit has identified the latter method as an "obvious clarity" case. Vinyard v. Wilson, 311 F.3d 1340, 1350 (11th Cir. 2002) (footnote omitted). To establish this case as an "obvious clarity" case, Plaintiff must show that "the words of the pertinent federal statute or federal constitutional provision" establishing the federal right allegedly violated are "specific enough to establish clearly the law applicable to particular conduct" such that "case law is not needed to establish that the conduct cannot be lawful." Vinyard, 311 F.3d at 1350.

Neither the text of the Eighth Amendment, nor the text of the First Amendment, nor the text of the Fourteenth Amendment on its face, prohibits the conduct of Defendant(s) Ennis and Moates in this case as unconstitutional. Even if Plaintiff had alleged conduct that violated his constitutional rights, neither the relevant bodies of caselaw nor the text of the relevant constitutional provisions would have put Defendant(s) Ennis and Moates on notice that their conduct would have violated Plaintiff's constitutional rights. Accordingly, Defendant Ennis and Defendant Moates, to the extent that the Amended Complaint states a claim against him, are

entitled to qualified immunity because they did not have notice that their actions violated any of the Plaintiff's constitutional rights.

C.    **Plaintiff has failed to allege personal involvement as required by 42 U.S.C. § 1983.**

In order to establish a constitutional violation for conduct under § 1983 Plaintiff must allege personal involvement on behalf of the Defendant(s).  The language of 42 U.S.C. § 1983 requires proof of an affirmative causal connection between the actions taken by the Defendant(s) and the constitutional deprivation.  Swint v. City of Wadley, 51 F. 3d 988 (11th Cir. 1995).  The requisite causal connection may be shown by the personal participation of the Defendant(s), a policy established by the Defendant(s) resulting in indifference to constitutional rights or a breach of a duty imposed state of local law which results in constitutional injury.  Zatler v. Wainwright, 802 F. 2d 397 (11th Cir. 1986).

Plaintiff has failed to allege that either Defendant Ennis or Defendant Moates, to the extent that a claim is stated against him in the Amended Complaint, were in any way personally involved in the allegations surrounding Plaintiff's deliberate indifference claim or his failure to protect claim. Plaintiff has offered no allegation demonstrating that the named Defendant(s) were in any way involved in the conduct that Plaintiff alleges is unconstitutional.  There are absolutely no facts in the record to show that the Defendant(s) personally participated in the circumstances surrounding Plaintiff's claims, nor does Plaintiff allege specifically how the Defendant(s) violated his constitutional rights.

The Eleventh Circuit in Hartley v. Parnell, 193 F.3d 1263 (11th Cir. 1999), established exactly what is required to state a claim (or prove) supervisory liability:

> Supervisory liability [under § 1983] occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional deprivation.  The causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need

> to correct the alleged deprivation, and he fails to do so.  The deprivations that constitute widespread abuse sufficient to notify the supervising official must be "obvious, flagrant, rampant and of continued duration, rather than isolated occurrences."  Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990) (citations omitted).

193 F.3d at 1269.   The causal connection may also be established where the supervisor's improper "custom or policy . . . result[s] in deliberate indifference to constitutional rights." Rivas v. Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991) (citing Zatler v. Wainwright, 802 F.2d 397 (11th Cir. 1986)).  In light of the applicable law, Plaintiff's allegations are insufficient to create liability on the part of the Defendant(s).  As such, all Plaintiff's claims are due to be dismissed.

Plaintiff's Complaint as amended contains no allegations demonstrating that the Defendant(s) were in any way involved in the actions he claims were constitutionally infirm. Consequently, Plaintiff's § 1983 claim is based upon nothing more than respondeat superior, the Complaint fails to state a claim for which relief may be granted against these Defendant(s).

**D.    There is no *respondeat superior* liability under 42 U.S.C. § 1983.**

To the extent that Plaintiff's claims against the Defendant(s) are an attempt to hold them liable under a *respondeat superior* theory, they must fail.  Neither the express language of § 1983 nor the holdings of the United States Supreme Court support liability on this basis.

42 U.S.C. § 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, ***subjects, or causes to be subjected***, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

(Emphasis added.)  The language of the statute requires that there be a direct causal link between Plaintiff and the actions of a putative defendant.  Merely employing an individual who causes harm is insufficient to invoke the remedy of this statute.

The United States Supreme Court addressed this exact issue and adopted this holding nearly 30 years ago.  Monell v. Dep't of Soc. Servs., 436 U.S. 658, 98 S. Ct. 2018 (1978).  In Monell, the Court cited § 1983 and held, "a municipality cannot be held liable under § 1983 on a respondeat superior theory."  436 U.S. at 691.  Accordingly, as both the explicit text of § 1983 and the opinions of the United States Supreme Court forbid vicarious liability, Plaintiff's respondeat superior claims fail.

### E.    Summary Judgment Standard

On a motion for summary judgment, the court should view the evidence in the light most favorable to the nonmovant.  Greason v. Kemp, 891 F.2d 829, 831 (11th Cir. 1990).  However, a plaintiff "must do more than show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  Only reasonable inferences with a foundation in the record inure to the nonmovant's benefit.  See Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133 (2000).  "[T]he court should give credence to the evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted or unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'"  Reeves, 530 U.S. at 151, quoting 9A C. Wright & A. Miller, Federal Practice and Procedure § 2529, p. 299.[9]  "A reviewing court need not 'swallow plaintiff's invective hook, line and sinker; bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like need not be credited.'"  Marsh v. Butler County, 268 F.3d 1014, 1036 n.16 (11th Cir. 2001) (en banc) quoting Massachusetts School of Law v. American Bar, 142 F.3d 26, 40 (1st Cir. 1998).

---

[9] Although Reeves was a review of a motion for judgment as a matter of law after the underlying matter had been tried, the Supreme Court, in determining the proper standard of review relied heavily on the standard for summary judgment stating, "the standard for granting summary judgment 'mirrors' the standard for judgment as a matter of law, such that 'the inquiry under each is the same.'"  Reeves, 530 U.S. at 150, citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-251 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

## CONCLUSION

These Defendant(s) deny each and every allegation made by Plaintiff, Derek Dede, in the Amended Complaint.  Defendant Ennis has not acted in a manner so as to deprive Plaintiff of any right to which he is entitled, nor has Defendant Moates, to the extent that a claim is stated against him in the Amended Complaint, acted to deprive the Plaintiff of any federal right.

## MOTION FOR SUMMARY JUDGMENT

The Defendant(s) respectfully request that this Honorable Court treat their Special Report as a Motion for Summary Judgment, and grant unto them the same.

Respectfully submitted this 2nd day of July, 2007.

> **s/Joseph L. Hubbard, Jr.**
> GARY L. WILLFORD, JR., Bar Number: WIL198
> JOSEPH L. HUBBARD, JR., Bar Number HUB015
> Attorneys for Defendants
> WEBB & ELEY, P.C.
> 7475 Halcyon Pointe Drive (36117)
> Post Office Box 240909
> Montgomery, Alabama  36124
> Telephone:  (334) 262-1850
> Fax:  (334) 262-1889
> E-mail:  jhubbard@webbeley.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this the 2nd day of July, 2007, I have electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, and that I have mailed a true and correct copy of the foregoing by United States Mail, postage prepaid, to the following non-CM/ECF participant:

> Derek Dede
> Coffee County Jail
> Complex #4
> New Brockton, Alabama, 36351

> **s/Joseph L. Hubbard, Jr.**
> OF COUNSEL

# Exhibit A
# Inmate Records of Derek Dede
# Intake Sheet

## ENTERPRISE POLICE DEPARTMENT
TRANSPORT SHEET (Coffee County Jail)

DATE ___11-17-2005___ ~~2004~~    TIME ___1913___ AM(PM)

STATUS        STATE _____        FEDERAL _____
              CITY _____         COUNTY X _____
                                      (List Division if Coffee)

NAME ___DEDE___    ___DEREK___    ___JOHN___
         LAST          FIRST          MIDDLE

ADDRESS _103 CHERLON STREET_    CITY _ENTERPRISE_    ZIP _36330_

POB _NEW ORLEANS, LA, ORELIA PARRISH_  SSN _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_  LICENSE ^AL _7529568_

AGE _33_  SEX _M_  RACE _B_  WEIGHT _140_  HEIGHT _6'8"_

HAIR _BLK_  EYES _BRO_    DOB _08/17/1972_

ARRESTED? YES _X_ NO _____    ARRESTING AGENCY _ENTERPRISE POLICE DEPARTMENT_

TYPE OF ARREST    WARRANT _X_ CALL _____ ON-VIEW _____

ARRESTING OFFICER _INV. CHRIS HAWLEY_    LOCATION _307 SANDERS STREET ENTER._

OFFENSE(S) _ROBBERY 1ST DEGREE_    MISDEMEANOR _____  FELONY _X_
           _____              MISDEMAENOR _____  FELONY _____
           _____              MISDEMEANOR _____  FELONY _____

TRANSFERRED FROM _____    HOLD FOR (agency) _____

RELAESE INFORMATION _NO BOND TO BE SET BY DISTRICT JUDGE! NO BOND._
_NO BOND TO BE SET BY JUDGE!_

SENTENCING INFORMATION _NO BOND TO BE SET BY JUDGE! NO BOND_
_NO BOND TO BE SET BY JUDGE_

COMMENTS _CLASS A FELONY!_

COMPLETED BY _INV. CHRIS HAWLEY_    BOOKED BY _____
                    SEARCHED _X_      PHOTO _X_
                    FINGERPRINTS _X_  GREEN CARD _X_

Enterprise P.D. Form 96-040



# Exhibit B
# Declaration of Ben Moates

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

DEREK DEDE,                          )
                                     )
        Plaintiff,                   )
                                     )
v.                                   )        Civil Action No. 1:07-cv-344-MEF
                                     )
SHERIFF BEN MOATES, et al.,          )
                                     )
        Defendants.                  )

### DECLARATION OF BEN MOATES
### PURSUANT TO 28 U.S.C. § 1746

STATE OF ALABAMA          )
                          )
COUNTY OF COFFEE          )

1.    My name is Ben Moates. I am over the age of nineteen and competent to make this affidavit. I served as Sheriff of Coffee County from January, 1995, to January, 2007. Before that time I was the Chief Deputy for Coffee County Sheriff's Department starting in 1991. I have been a sworn deputy since 1990. I have been a reserve Deputy since 1984. I now serve part-time as a lieutenant for the New Brockton Police Department.

2.    I have read the Complaint filed in this matter.

3.    It was the policy of the Coffee County Sheriff's Department to perform a medical screening on each inmate during the booking process. The screening included questions about Tuberculosis (TB) and possible exposure to TB. Each inmate was given the medical screening before being assigned to their housing unit.

4.     I am aware that in his Amended Complaint, Derek Dede alleges that during his incarceration in the Coffee County Jail, he did not receive adequate medical treatment for his dizzy spells and headaches.

5.     The policy of the Coffee County Jail was to conduct sick call each morning. Inmates were made aware of this procedure through the Inmate Rules and Regulations they received at intake.  To not provide an inmate with necessary medical care would be a violation of the policies I established for the jail.

6.     To my knowledge, Mr. Dede received medical treatment in response to his complaints about dizzy spells and headaches.

7.     I am aware that in his Amended Complaint, Derek Dede alleges that during his incarceration in the Coffee County Jail, he contracted tuberculosis from another inmate, Dennis Cooper.

8.     On November 28, 2006, Dennis Cooper, was incarcerated in the Coffee County Jail. On May 16, 2007, Mr. Cooper was transferred to Kilby Correctional Facility.

9.     It was the policy of the Coffee County Jail to have TB skin tests performed by the Health Department on inmates who may have been exposed to TB. If the test comes back positive for exposure, the inmate is then provided with any necessary testing or treatment prescribed by the Health Department.

10.     To my knowledge, Mr. Dede would have been provided all necessary testing or treatment prescribed by the Health Department in response to his concerns about exposure to TB.

11.     I am not a medical professional.

12.     I certify and state that the documents provided to the Court which are attached to the Defendants' Special Report are true and correct copies of inmate records, kept at the Coffee County Jail in the regular course of business.

2

13.     I swear, to the best of my present knowledge and information that the above statements are true, that I am competent to make this declaration, and that the above statements were made by drawing from my personal knowledge of the situation.

Executed on this the $\underline{29}$ day of June, 2007.

BEN MOATES

3

# Exhibit C
# Declaration of Zack Ennis

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

DEREK DEDE,                          )
                                     )
     Plaintiff,                      )
                                     )
v.                                   )        Civil Action No. 1:07-cv-344-MEF
                                     )
SHERIFF BEN MOATES, et al.,          )
                                     )
     Defendants.                     )

<u>DECLARATION OF ZACK ENNIS</u>
<u>PURSUANT TO 28 U.S.C. § 1746</u>

STATE OF ALABAMA          )
                          )
COUNTY OF COFFEE          )

    1.     My name is Zack Ennis. I am over the age of nineteen and competent to make this declaration. I served as the Jail Administrator for the Coffee County Jail from 1983 to June 12, 2006.

    2.     I have read the Complaint filed in this matter.

    3.     I am familiar with Derek Dede as he has frequently been incarcerated in the Coffee County Jail. Mr. Dede was housed in cellblock 2 throughout his most recent incarceration in the Coffee County Jail from November 17, 2005 at least until the end of my service at the jail.

    4.     I am aware that in his Amended Complaint, Derek Dede alleges that during his incarceration in the Coffee County Jail, he did not receive adequate medical treatment for his dizzy spells and headaches.

    5.     The policy of the Coffee County Jail was to conduct sick call each morning. Inmates were made aware of this procedure through the Inmate Rules and Regulations they

received at intake.   To not provide an inmate with necessary medical care would be a violation of the policy of the Jail.

6.      To my knowledge, Mr. Dede received medical treatment in response to his complaints about dizzy spells and headaches.

7.      I am aware that in his Amended Complaint, Derek Dede alleges that he was exposed to Tuberculosis (TB) while he was incarcerated in the Coffee County Jail. I have no personal knowledge of whether Mr. Dede had any interaction with Dennis Cooper while they were incarcerated in the Coffee County Jail, because I was no longer working at the Jail when Dennis Cooper arrived on November 17, 2006.

8.      Other than what I have read in Mr. Dede's inmate file, I have no personal knowledge of what testing or treatment Mr. Dede received from the Health Department in response to his concerns about exposure to TB.

9.      As the Jail Administrator for the Coffee County Jail, I was responsible for the day-to-day operation of the jail for Sheriff Ben Moates.  I am familiar with the policies and procedures governing the operation of the Coffee County Jail at that time.

10.     It was the policy of the Coffee County Sheriff's Department to perform a medical screening on each inmate during the booking process.   The screening included questions about TB and possible exposure to TB.  Each inmate was given the medical screening before being assigned to their housing unit.

11.     I am not a medical professional.

12.     I certify and state that the documents provided to the Court which are attached to the Defendants' Special Report are true and correct copies of inmate records, kept at the Coffee County Jail in the regular course of business.

2

13.    I swear, to the best of my present knowledge and information that the above statements are true, that I am competent to make this declaration, and that the above statements were made by drawing from my personal knowledge of the situation.

Executed on this the ___28___ day of June, 2007.

ZACK ENNIS

3

# Exhibit D
# Declaration of Stanley Guy Roberts

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

DEREK DEDE,                              )
                                         )
    Plaintiff,                        )
                                         )
v.                                       )     Civil Action No. 1:07-cv-344-MEF
                                         )
SHERIFF BEN MOATES, et al.,              )
                                         )
    Defendants.                       )

DECLARATION OF STANLEY GUY ROBERTS
PURSUANT TO 28 U.S.C. § 1746

STATE OF ALABAMA            )
                            )
COUNTY OF COFFEE            )

    1.    My name is Stanley Guy Roberts.  I am over the age of nineteen and competent to make this declaration.  I served as a corrections officer for the Coffee County Jail from 1999 to present.

    2.    I am familiar with Derek Dede as he has frequently been incarcerated in the Coffee County Jail.  Mr. Dede was housed in cellblock 2 throughout his most recent incarceration in the Coffee County Jail from November 17, 2005 to present.

    3.    I am aware that in his Amended Complaint, Derek Dede alleges that during his incarceration in the Coffee County Jail, he did not receive adequate medical treatment for his dizzy spells and headaches.

    4.    Plaintiff first complained about his alleged headaches and dizzy spells in an inmate grievance form on May 3, 2006.

    5.    On June 7, 2006, Plaintiff was transported to Dr. Cochran for his complaints of dizzy spells and headaches.

6.    Dr. Cochran prescribed Norgesic Forte for the Plaintiff's headaches.  Plaintiff was provided this medication.

7.    On September 1, 2006, Plaintiff was again transported to Dr. Cochran.

8.    On October 5, 2006, Plaintiff was transported to Elba General Hospital to see Dr. Roberts.

9.    Dr. Roberts prescribed Keflex for the Plaintiff's headaches.  Plaintiff was provided that medication.  Dr. Roberts also scheduled Plaintiff for a CT scan of his head.

10.    On October 6, 2006, Plaintiff was transported to the Elba General Hospital for a CT scan.  I received no further instructions from Dr. Roberts regarding Plaintiff's medical care.

11.    I am aware that in his Amended Complaint, Derek Dede alleges that during his incarceration in the Coffee County Jail, he contracted Tuberculosis (TB) from another inmate, Dennis Cooper.

12.    On November 28, 2006, Dennis Cooper, was incarcerated in the Coffee County Jail.  On May 16, 2007, Mr. Cooper was transferred to Kilby Correctional Facility.

13.    Upon his arrival at the jail, Mr. Cooper listed on his inmate medical screening sheet that he had Tuberculosis (TB).

14.    During Mr. Cooper's entire stay at the Coffee County Jail, Mr. Cooper was provided INH, vitamin B-6, a vitamin and a medication used in combination to treat TB, both of which were issued by the Health Department.  Dr. A. Preyear prescribed this medication for Mr. Cooper to treat him for exposure to TB.  Dr. Preyear's opinion advised that Mr. Cooper could mix with the general population so long as he was on this medication.

15.    On July 26, 2006, four months before Mr. Cooper came to the jail, Mr. Dede was examined by a Health Department official in the Coffee County Jail for TB.  Mr. Dede tested positive for exposure to TB.

2

16.    On August 11, 2006, Mr. Dede received a chest X-ray to determine whether he had contracted TB. The TB nurse from the Health Department confirmed that Mr. Dede's X-ray came back negative for contraction of TB.

17.    It is my understanding that the Health Department prescribes an inmate TB medication as a preventative measure once that inmate tests positive for exposure to TB.

18.    In August, 2006, the Health Department prescribed Mr. Dede INH and vitamin B-6 to prevent and treat his exposure to TB. This medication was administered to the Plaintiff.

19.    I swear, to the best of my present knowledge and information that the above statements are true, that I am competent to make this declaration, and that the above statements were made by drawing from my personal knowledge of the situation.

Executed on this the _28_ day of June, 2007.


STANLEY GUY ROBERTS

3

**Exhibit E**
**Inmate Records**
**Medical Transport Sheet, 6/7/06**



## COFFEE COUNTY JAIL
### BEN MOATES, SHERIFF
### ZACK ENNIS, ADMINISTRATOR
phone: 334-894-5535
fax: 334-804-6231

## MEDICAL TRANSPORT SHEET

Date: 6\7\06

Name of Inmate: Dereth Dede

Reason for Medical Care: Doctor Appt

_____

_____

_____

Transported From: Coffee County Jail

Transported To: Dr. Cochran

Time of Transport: 1015

Transporting Officer: S. Roberto

## Inmate Classification (Check One)

Federal _____
State _____
County  x
(City) Enterprise _____ Elba _____ New Brockton _____ Kinston _____

*This form to be completed for each inmate receiving any medical treatment

**Exhibit F**
**Inmate Records**
**Patient Record, 6/7/06**

# COFFEE COUNTY (ALA.) JAIL
## PATIENT RECORD

Name Derrick Dean

Address _____

Date 6/27/06    Time 1015    A.M. / P.M.

☒ County Prisoner    ☐ State Prisoner    ☐ Other NKDA    Age _____    Sex Male

162/80

Complaint: Doctor Apps - c/o falling N/Vs, dizziness, headaches last week. BP shot up so bad to B.Dek, BP 162/80 glu co ____ this morning @ time.

History of Complaint: _____

Doctor Impression: Muscle tension cephalgia hyperten

Treatment: Mayor's office

_____
Doctor Signature    J.Bleck, MD

Quality Printing Co.

# Exhibit G
# Declaration of Henry Stewart Cochran

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

DEREK DEDE,                          )
                                     )
        Plaintiff,                   )
                                     )
v.                                   )        Civil Action No. 1:07-cv-344-MEF
                                     )
SHERIFF BEN MOATES, et al.,          )
                                     )
        Defendants.                  )

DECLARATION OF HENRY STEWART COCHRAN
PURSUANT TO 28 U.S.C. § 1746

STATE OF ALABAMA          )
                          )
COUNTY OF COFFEE          )

1.      My name is Henry Stewart Cochran. I am over the age of nineteen and competent to make this declaration.

2.      I have been a medical doctor for 32 years. I obtained my M.D. from Wake Forrest University in 1975. I did my residency at Fitzsimmons Army Hospital. I served 21 years as a physician in the United States Army. I have my own family practice and also work as an emergency room physician at Elba General Hospital.

3.      I treated the Plaintiff on June 7, 2006.

4.      The Plaintiff's chief complaint at the time was headaches, dizziness, and passing out (he stated he had done the latter twice in one week). The Plaintiff also complained of a knot on his back.

5.      The Plaintiff did not complain of tuberculosis or symptoms related to the disease.

1

6.    Upon examination, I noted no abnormalities in his ears, nose, and throat. Neurologically he was normal. He did have soreness on his temple which is indicative of muscle tension headaches. Finally, the Plaintiff had a lypoma on his back.

7.    A lypoma is a benign fat cell tumor.

8.    With respect to the Plaintiff's headaches, dizziness, and passing out, I concluded that he had nothing more than muscle tension headaches. There were no indications whatsoever that the Plaintiff had any other condition that would cause dizziness or black outs.

9.    I prescribed Norgesic Forte for the Plaintiff's headaches.

10.    The lypoma did not require any intervention whatsoever. The only time I ever recommend surgical intervention for lypomata is when it presents a significant cosmetic problem for the patient. The Plaintiff's lypoma is on his back where this was not a concern. In any case, removal of a lypoma is an elective procedure.

11.    I saw the Plaintiff again on September 1, 2006, regarding his continued complaints about headaches and dizziness. He provided a history of having passed out, but I have no knowledge of the veracity of those claims. He also stated that he was unable to take the Norgesic Forte I had prescribed because it gave him rectal bleeding.

12.    On September 1, 2006, Plaintiff was somewhat combative and verbally abusive to me and I refused to provide any further treatment.

13.    I swear, to the best of my present knowledge and information that the above statements are true, that I am competent to make this affidavit, and that the above statements were made by drawing from my personal knowledge of the situation.

Executed on this the ___28th___ day of June, 2007.


                                              _Henry Stewart Cochran_
                                              Henry Stewart Cochran

                              2

**Exhibit H**
**Inmate Records**
**Medical Transport Sheet 9/1/06**



**COFFEE COUNTY JAIL**
**BEN MOATES, SHERIFF**
**ZACK ENNIS, ADMINISTRATOR**
phone: 334-894-5535
fax: 334-804-6231

## MEDICAL TRANSPORT SHEET

Date: *09/01/06*

Name of Inmate: *Derek Dede*

Reason for Medical Care: _____

_____

_____

Transported From: *CCJ*

Transported To: *Dr Cochran*

Time of Transport: *9:00*

Transporting Officer: *C/o Carodu*

## Inmate Classification (Check One)

Federal _____
State _____
County *X*
(City) Enterprise____ Elba____ New Brockton____ Kinston____

*This form to be completed for each inmate receiving any medical treatment

# Exhibit I
# Inmate Records
# Medical Transport Sheet 10/5/06



### COFFEE COUNTY JAIL
### BEN MOATES, SHERIFF
### ZACK ENNIS, ADMINISTRATOR
phone: 334-894-5535
fax: 334-804-6231

## MEDICAL TRANSPORT SHEET

Date: 10/5/06

Name of Inmate: Derek Dede

Reason for Medical Care: Doctor Appointment

Transported From: Coffee County Jail

Transported To: Doctor Roberts

Time of Transport: 2:00

Transporting Officer: Michael Bryn

## Inmate Classification (Check One)

Federal _____
State _____
County ___✓___
(City) Enterprise _____ Elba _____ New Brockton _____ Kinston _____

*This form to be completed for each inmate receiving any medical treatment

COPY

**Exhibit J**
**Inmate Records**
**Medical Transport Sheet, 10/6/06**



## COFFEE COUNTY JAIL
### BEN MOATES, SHERIFF
### ZACK ENNIS, ADMINISTRATOR
phone: 334-894-5535
fax: 334-804-6231

## MEDICAL TRANSPORT SHEET

Date: *10-6-06*

Name of Inmate: *Derek Dede*

Reason for Medical Care: *CT of Head*

Transported From: *County Jail*

Transported To: *Elba General Hospital*

Time of Transport: *08:15*

Transporting Officer: *M. Bryan*

## Inmate Classification (Check One)

Federal _____
State _____
County *X*
(City) Enterprise _____ Elba _____ New Brockton _____ Kinston _____

*This form to be completed for each inmate receiving any medical treatment

# Exhibit K
# Inmate Records
# Medical Transport Sheet, 8/11/06

Copy

**COFFEE COUNTY JAIL**
**BEN MOATES, SHERIFF**
**ZACK ENNIS, ADMINISTRATOR**

phone: 334-894-5535
fax: 334-804-6231

**MEDICAL TRANSPORT SHEET**

Date: 8/11/06

Name of Inmate: Derrick Dede

Reason for Medical Care: X-Ray

Transported From: CCJ

Transported To: Health Dept

Time of Transport: 8:15

Transporting Officer: D. Hudson / M. Bryan

**Inmate Classification (Check One)**

Federal____
State____
County X
(City) Enterprise____ Elba_____ New Brockton_____ Kinston

*This form to be completed for each inmate receiving any medical treatment

**Exhibit L**
**Inmate Records**
**Grievance Response, 8/23/06**

Coffee County Jail
Ben Moates, Sheriff
Ruth Scheipe, Administrator

**Grievance Response**

Date of Grievance: 08/23/2006

Inmate Complainant: ~~Antonio Jones~~    *Derek Wade*

Date of Response: 08/23/2006

**Response:** About 1230 hrs this date I spoke to the TB Nurse from the Health Dept., Ms. Simmons. She assured me that all of the X-rays taken were normal. She also advised that she was bringing the medication the first part of next week and that she would take sputum tests from you since you seemed concerned about your health. She will take blood at the time she brings the meds. The meds can't be dispensed until the lab work on the blood work is back.

Your other issue has already been addressed by me to you to the very best of my ability.

On a personal note, it certainly didn't take long for you to change from the person you presented yourself as into the person you seem to be now, I am really sorry about that.

*Ruth Scheipe*
Ruth Scheipe
Jail Administrator